SANFORD B. KELLOGG, Respondent, *v.* JAMES MULLEN, Appellant.

1. *Lands and land titles — Boundaries fixed — Monuments must prevail over linear measurements.*—A., being owner of 120 feet on Third street, in the city of St. Louis, deeded to B. 60 feet thereof, described as adjoining on the north his grantors. B. afterward conveyed to C. the northern 30 feet of this property, and the remainder to D., being 30 feet to each. In a controversy between C. and D. as to location, *held,* that were there any monuments fixing the southern boundary of A.'s original land, they must prevail over the linear measurements. Otherwise D. must yield to C., and, unless barred by adverse possession, will be entitled to recover a similar tract from his southern neighbor.

*Appeal from St. Louis Circuit Court.*

*S. B. Kellogg,* for respondent.

*Bakewell & Farish,* for appellant.

BLISS, Judge, delivered the opinion of the court.

This is the same action that is reported in 39 Mo. 174. After the case was remanded the plea of the statute of limitations was abandoned, and a trial was had upon the question of location merely. All the property whose location is involved lies in the northwest part of block 53, and fronts on Third street. The common source of title is Alexander Bellisime, who owned 120 feet (French) on Third street by 150 on Poplar. Defendant, in his argument, asserts that Bellisime's south line is the center of the block; but I find nothing in the record to warrant the assertion. His title deeds indicate nothing in that respect, and there is nothing to show how far the block extended south of him, or who were its owners, except that the name is given upon whom he is bounded. By two deeds, one in 1811 and one in 1812, he extends south 120 feet (French); and we are not advised as to the size of the block, or whether there was any such division as a block, or whether there was any other cross street near him except the one bounding him on the north. We must assume, then, that he owned, fronting on Third street, the number of feet mentioned in his deeds, and this fact becomes material.

Bellisime and wife, on the 6th of April, 1816, conveyed to Henri Baltut 60 feet (French) front on Third street by 150 deep, giving his boundaries, and "adjoining on the north his grantors." This conveyance gives Baltut the south half of what Bellisime thus owned, and, by a marriage contract, it afterward became the property of his wife, Pelagie, who was afterward twice married, and became Pelagie Boyer and Pelagie Charleville. Thus Bellisime's lot became divided into two equal parcels; and before said Pelagie made any conveyances, he had sold the north half, which, by various transfers, became, on the 29th of June, 1831, the property of Hilaire Semont, or Semons, or Cimmons, as he is variously called in other deeds. The description of the land in all the deeds is substantially the same, and is 60 feet (French) front by 150 deep, and is bounded north by the cross street (Poplar).

Coming back to the south half, first conveyed to Baltut, I find that Pelagie Boyer, on the 27th of November, 1847, as part of the land so received of Bellisime, conveyed to Thomas J. White 32 feet fronting on Third street by 160 deep, bounded north by a lot of Cimmons; and by three other successive conveyances the same land, on the 8th of February, 1854, comes into plaintiff's hands. In each instrument, Cimmons or Semons is called for on the north; and the front is 32 feet, which is equal to 30 feet French. Other calls show that she intended to convey next to Semont.

On the 10th of January, 1851, Pelagie Laforce (Boyer) conveys to O'Flaherty 60 feet (French) front by 150 deep, which covers all that had been conveyed through White and others to plaintiff, with what she had left. Of course the deed only operates upon what remained in her hands after her deed to White, and can in no way affect plaintiff's title. The dispute is between Kellogg and the tenant of O'Flaherty; the former claiming his full 30 feet French, south of Semons, which claim cuts off over four feet from defendant's possession; and the latter, who has his full 32 feet English (30 feet French), insisting that plaintiff must make up his complement out of Semont.

Had there been evidence to show that the south line of Belli-

sime, before his conveyance to Baltut, was the center of the block, which is less than 120 feet (French) from the north line, then Semont, as his last grantee, must lose, and the plaintiff and defendant, who hold under Baltut, will each take their full 30 feet French. This the defendant's landlord has now, and the plaintiff would be required to move north, instead of south, for his complement. It would make no difference if Semont had acquired title by limitation, as he should have moved before. But, as we have before seen, the record fails to show any monuments locating, or from which to locate, Bellisime's south line. Hence we must assume that it was as far south as his deeds make it, and far enough to include the usual calls for front feet in his conveyances to Baltut, and to Bouvet, through whom Semont holds; in which case the plaintiff must take from O'Flaherty the strip in dispute, which is necessary to give him his 30 feet French; and O'Flaherty, if he has not lost it by adverse possession, must take a similar strip from his southern neighbor. This view was taken by the court below, and the defendant's declarations of law, based upon his theory of the case, were properly refused.

The judgment will be therefore affirmed. The other judges concur.