# STATE OF MISSOURI

AT THE

## APRIL TERM, 1903.

*(Continued from Volume 174.)*

175    1<br>179  6532

## ROBERT WHITAKER et al., Appellants, v. ELIZABETH WHITAKER et al.

### Division One, May 27, 1903.

1. **Limitations: EVIDENCE: CLAIM OF OWNERSHIP.** A statement of a witness that defendant's father "claimed to own the farm after he moved upon it" is competent evidence as going to show the character of the deceased's possession, and therefore to sustain the plea of ten years' adverse possession through him. It is not self-serving testimony.

2. **Fraudulent Conveyance: CREDITORS ALONE CAN COMPLAIN.** A deed by a life tenant to her remaindermen merges the title in them, and if it is in fraud of creditors the remaindermen can not complain, but only her creditors, and if defendant after the making of such deed enters into possession and so continues for the statutory period, the remaindermen are barred by limitation, whether the life tenant is living or not.

3. ———: **DELIVERY: RECORD: DISCLAIMER: MERGER: ACCEPTANCE.** The recording of a deed from the life tenant to the remaindermen is a good delivery thereof to them, and the conveyance being for their benefit its acceptance will be presumed, unless they affirmatively show that they disclaimed it, and if no such showing is made it

Vol 175 mo—1.                                     . (1)

will be held that the conveyance caused the lesser life estate to merge into the larger fee simple of the remaindermen. And an institution of a partition suit by the remaindermen soon after the deed was made will be considered an acceptance. So also will a suit against the person in possession during the life of the life tenant.

4. Conveyances: DEED TO CERTAIN REMAINDERMEN: PETITION: ESTOPPEL. In a suit by remaindermen for land which was conveyed by the life tenant to seven of her eight children, they will not be permitted to set up a claim for the one-eighth interest, inherited by them under the will creating the estate, if they are barred by the statute of limitation as to the rest, and if their suit was for the whole tract, and their petition does not attempt to distinguish between what was and what was not covered by the deed from the life tenant, and the land was all one farm, and the issue which was joined and settled was whether or not they are entitled to the whole.

5. ———: PATENT MISTAKES: CURED BY COURT. Where omissions in the description of land are patent and the meaning obvious, they can be cured by construction of the deed by the court. Where land was known and conveyed as the Whitaker farm, and its boundaries given, and the number of acres declared to be 314, the court will not confine the farm to 161 acres because that was all that was described by numbers, the land being located in the right sections, but certain tracts omitted in the description by numbers.

6. ———: ———: INTENTION. Whenever a deed contains two inconsistent descriptions, that one which the whole instrument shows best expresses the intention of the parties, must prevail. A specific description generally prevails over a general description, but whenever possible the real intent is to be gathered from the whole description, including the general description as well as the particular one.

Appeal from Pike Circuit Court.—*Hon. D. H. Eby, Judge.*

AFFIRMED.

*J. H. Blair & Son* for appellants.

(1) The court erred in admitting in evidence the testimony of Robert A. Campbell that Dr. Whitaker, father of defendant, claimed to own the land. It was self-serving, made in the absence of the other heirs, as held by this court on the former appeal. Whitaker v. Whitaker, 157 Mo. 342. That ruling was *res adjudicata*

on the last trial in the court below. May v. Crawford, 150 Mo. 504. (2) The court erred in refusing to give instruction 2 asked by plaintiffs. Mrs. Whitaker's deed to her children did not merge her life estate into their fee simple reversion, because: (a) It was a voluntary conveyance and in law fraudulent and absolutely void. Needles v. Ford, 167 Mo. 495; Landers v. Ziehr, 150 Mo. 403; Snyder v. Free, 114 Mo. 360; Hurley v. Taylor, 78 Mo. 238; Fisher v. Lewis, 69 Mo. 629; Payne v. Stanton, 59 Mo. 158; Loeher v. Murphy, 45 Mo. 519; Banks v. Price, 41 Mo. App. 291; R. S. 1855, p. 802, sec. 2. (b) Todd, the execution purchaser at the creditor's sale, acquired under his purchase both the legal and equitable title to Mrs. Whitaker's life estate, and having taken possession at once under his purchase, did not have to have her deed set aside. Failing to do so, the lapse of ten years after the execution of the deed did not give the fraudulent grantees any title to the life estate, they never having been in possession, and the fraudulent deed did not cloud Todd's title. Potter v. Adams, 125 Mo. 118; Peak v. Laughlin, 49 Mo. 162; Slattery v. Jones, 96 Mo. 216; Freeman on Execution, sec. 136; Bump on Fraud Con. (3 Ed.), 474; 14 Am. and Eng. Ency. Law (2 Ed.), 311. (c) The deed was never delivered to or accepted by the children; therefore, in law, never existed. 9 Am. and Eng. Ency. of Law (2 Ed.), pp. 154 and 160; McNear v. Williamson, 166 Mo. 358; Powell v. Banks, 146 Mo. 620; Miller v. Lullman, 81 Mo. 311. (d) There is no act or deed shown by the evidence from which the acceptance of the deed might be inferred, unless it is the institution of an action in ejectment in the year 1874. Mrs. Whitaker was a party plaintiff to that suit. That suit was commenced about eighteen years after the deed was made and recorded. An acceptance then would not relate back and affect Todd's title as a purchaser under the Jackson judgment rendered in about ten months after the execution of the deed. Cravens v. Rossiter, 116 Mo. 338; Hoffman v. Nixon, 152 Mo. 303;

Tiedeman Real Prop. (Enlarged Ed.), sec. 812. (e) Conceding that the deed was delivered and accepted by the children, it would only be a cloud on the owner of the legal and equitable title, who was F. C. Todd. The children did not take any estate under it but a mere cloud. The deed being fraudulent and void, would not enable the children to recover in ejectment against Todd or his grantees, as they acquired Mrs. Whitaker's legal and equitable title under the creditor's sale, and it would not bar them from recovering in ejectment against the children, if they had obtained the possession under their mother's deed. Potter v. Adams, 125 Mo. 118; Snell v. Harrison, 104 Mo. 158; Chandler v. Bailey, 89 Mo. 641.

*Ball & Sparrow* and *Dempsey & McGinnis* for respondents.

(1) R. A. Campbell's testimony was clearly competent. Whitaker v. Whitaker, 157 Mo. 342; Dunlap, Adm., v. Griffith, 146 Mo. 283. (2) The court properly refused to give instruction 2 asked by appellant. The question was settled by the Supreme Court in this same case. Whitaker v. Whitaker, 157 Mo. 342. (3) The contention of appellant that the deed from Karen H. Whitaker to her children was not accepted by them is not well taken. In fact, appellant's counsel certainly can not be serious in such contention. First. Because the deed was placed on record in 1856, and immediately suit for partition was begun. Second. In 1874, ejectment suit was instituted against this respondent and her mother. If they did not accept the deed they would not have instituted the ejectment suit and could not have done so because they had no title. Same parties in ejectment suit as in this. Third. Because the evidence of appellants show that they knew of the deed and accepted it. Fourth. This case was tried the first time by appellants on the theory that the deed from Karen H. Whitaker to her

children was void, but when the Supreme Court decided otherwise, the appellant fell back upon the non-acceptance of the deed. Fifth. "Besides, the assent of the grantees is always presumed, where the instrument is beneficial to them." Kingman & Co. v. Machinery and Buggy Co., 150 Mo. 282. (4) "If the title, the testimony, the parties, the rulings and the land in suit in ejectment were the same on the second trial as on the first, the decision on the first appeal is decisive of the case on the second appeal." McAnaw v. Clark, 167 Mo. 443. The facts in the case are almost exactly the same as on former appeal. The only difference is appellants now try to make it appear that they did not accept deed from Karen H. Whitaker; otherwise title is the same, parties the same and rulings the same. Gamble v. Gibson, 83 Mo. 290.

MARSHALL, J.—This is an action of ejectment for certain land in Pike county. It is the second appeal of the case to this court. The decision on former appeal is reported in 157 Mo. 342. The judgment of the circuit court was reversed and the cause remanded for trial anew, because the circuit court had erred in permitting Robert A. Campbell to testify "that he understood Dr. Benjamin K. Whitaker, the father of defendant, to say that he acquired the title of his brothers and sisters in this land, and that they were compensated by his interest in Mississippi, but the details of the conversation he could not remember. This statement was self-serving. It was entirely narrative, and made in the absence of the other heirs, and hearsay," and because the trial court had erred in giving the jury a peremptory instruction to find for the defendants. The case was tried anew before a jury, a verdict rendered for the defendants, and plaintiffs appealed.

The issues are the same now as then, the petition is in the usual form, and the ouster is laid as of March,

1897.    The answer admits possession and claim of exclusive ownership, and pleads the ten-year statute of limitations.    The reply is in effect a general denial. The evidence is practically the same now as before, except that Mr. Campbell instead of testifying as above stated, was not examined as to what Dr. Whitaker said about his having acquired the interest of his brothers and sisters in the land, but he testified, "Dr. Whitaker claimed to own the farm after he moved on it." This was objected to, and it is claimed that it was incompetent under the opinion of this court on former appeal.   This, however, is a mistake, for the testimony that "Dr. Whitaker claimed to own the farm after he moved on it" is a very different thing from his saying that Dr. Whitaker said he had acquired the interest of his brothers and sisters.   The latter was clearly a self-serving statement, while the former is clearly admissible as going to show the character of his possession, and therefore to sustain the plea of ten years' adverse possession.   No further attention therefore need be paid to this assignment of error.

The facts are so clearly stated in the opinion of GANTT, P. J., on former appeal, that it is unnecessary to repeat them here.

The salient features of the case, however, are, that Benoni Whitaker is the common source of title.   He died, testate, on December 18, 1839, leaving a widow and eight children, of whom the plaintiffs are the survivors.   The defendant is the only heir of one of the deceased children, Benjamin K. Whitaker.   The testator devised all his property, real and personal, to his wife, but provided that if she married again she should have only one-third and the remainder should be divided among his children.   It is conceded, and was held on former appeal, that the widow acquired only a life estate, and the remainder in fee passed to the children.   After the testator's death, the widow

moved, with her children, to Mississippi, leaving
James O. Broadhead, her attorney in fact, to man-
age and look after the land.   On February 17, 1855,
the widow, through her attorney in fact, contracted to
sell the land to one Jackson, and to give him a fee
simple title thereto.   He tendered the money, but as
she had only a life estate she could not give him a
fee-simple title.   Thereupon he sued her for dam-
ages for breach of contract.   While that suit was
pending the widow returned to Pike county, and on
April 17, 1856, in consideration of love and affection,
she quitclaimed the land to her seven children who
were of age.   On the same day one of the sons insti-
tuted a suit in partition against his mother and
brothers and sisters, which ripened into a judgment.

Thereafter on March 25, 1857, Jackson sued out
an attachment in aid of his suit and had it levied on
the widow's interest in the land, and on May 17, 1858,
judgment was rendered for the plaintiff, and the land
sold under execution on March 8, 1860, to Francis C.
Todd, who took possession of the land in 1860, and on
January 26, 1866, he conveyed it to his wife Elizabeth,
and his daughter Elizabeth A., who afterwards mar-
ried Benjamin K. Whitaker.   The wife, Elizabeth,
died, and Elizabeth A. Whitaker acquired her inter-
est by descent.   Since 1860 the defendant and her
father under whom she claims, have been in the open,
notorious, continuous, adverse possession of the land
claiming absolute ownership thereof against the
world.

In 1874 the children instituted a suit in ejectment
against the defendant and her mother to recover the
land.   The defendants again asserted title and ad-
verse possession, and upon a trial, judgment was
rendered for the defendants.

The widow died in 1890.   Nothing further was
heard of any claim of the plaintiffs until August 25,
1897, when this suit was begun.   Upon the former

trial and appeal, the plaintiffs' theory was that the widow had only a life estate, that her deed to her children was fraudulent as to Jackson, and therefore the life estate did not merge in the fee, and hence the statute of limitations did not commence to run against the fee until the death of the life tenant; that they were not entitled to possession until the termination of the life estate; that Todd acquired the widow's life estate and was entitled to the possession until her death; that the life estate terminated in 1890, and this suit was begun in 1897, and hence the defendants had no title by limitation, and the life estate having terminated they were no longer entitled to possession.

Upon former appeal it was held that even if the widow's deed to her children was fraudulent as to Jackson, her creditor, it was good as to her children, and that no one except Jackson or the purchaser at the execution sale under the Jackson judgment, could attack the deed from the widow to her children for fraud; that when the widow made the deed to her children the life estate became at once merged in the fee and that a right of action at once enured to the children, and hence the statute of limitations began to run against them, and as the defendant and her father had been in possession since 1860, and had by "acts overt and notorious" imparted notice to their co-tenants that their rights in the land were invaded, there was an actual ouster of the co-tenants, and therefore the defendant had acquired title by limitation. The plaintiffs again make the same contention and insist that the conclusion reached by this court on former appeal is wrong.

It is plain that the conclusion on former appeal is right, for the plaintiffs cannot plead fraud in their mother's deed to them. It was not fraudulent as to them, however much it may have been as to Jackson, and if fraudulent as to Jackson he alone could complain, and he never complained. The former opinion

is so manifestly right that no further discussion of the contention in this regard is permissible.

On the second trial, however, the plaintiffs also contended that the deed from their mother was never delivered to them and they never accepted it, and therefore the life estate did not merge in the fee, and hence the statute of limitations did not begin to run against them until the death of the mother in 1890.

The deed from their mother to them was clearly for their benefit. It wiped out the life estate and gave the remaindermen an immediate right to the possession, which was manifestly for their benefit. The deed was duly recorded. The recording of the deed was a good delivery, and the conveyance being for the benefit of the grantees, their acceptance will be presumed, unless they show affirmatively that they disclaimed it. [Kingman v. Cornell-Tebbetts Machine & Buggy Co., 150 Mo. l. c. 310, et seq.; 9 Am. and Eng. Ency. Law (2 Ed.), p. 162, and notes.]

Instead of showing a disclaimer the plaintiffs accepted the conveyance, for on the same day they instituted a partition suit based upon their present right to the property, and in 1874 they sued the defendant for the possession, which they could not have done without having accepted the conveyance, for their right of action would not then otherwise have accrued, as without such acceptance their right of action would not accrue until the death of the life tenant. So that both in law and in fact they did accept the conveyance, and the statute of limitations began to run against them at that time.

Lastly it is insisted that the deed from the mother did not cover all the land, and as to the part not covered by the deed, the life estate was not cut out and their right of action did not accrue until their mother's death in 1890.

Several controlling reasons are apparent showing that this contention is untenable. In the first place, the petition claims the whole farm of 315.72 acres, and does not attempt to distinguish between what was and what was not covered by the deed from the widow. This was the issue that was joined and tried. No other claim is permissible now.

In the second place, the land was all one farm, all the parts were connected. It was known as the "Whitaker farm." The deed conveyed all the widow's interest, "in and to the lands formerly owned by her deceased husband in Pike county, and usually known as the Whitaker farm, containing about 314 acres, 'bounded on the north by the lands of Hiram Henderson, on the east by lands of Alexander Summers and on the west by those of Isaac Orr, and known by the following numbers.'" The numbers given describe five tracts of land, only two of which adjoin, and instead of being 314 acres only aggregate 161.91 acres. This is brought about by the patent mistake of the scrivener, who called for land in the proper sections and quarter sections (except as to 5.91 acres in section 17, as to which there is a glaring misdescription) but did not call for all the land in such quarter sections that constituted parts of the Whitaker farm, and which was bounded on the north by lands of Henderson, on the east by lands of Summers and on the west by lands of Orr. The parts omitted by the calls of the deed all lie within such boundaries.

There was but one Whitaker farm in Pike county, and it lay in one contiguous tract, and was bounded on three sides by the lands of Henderson, Summers and Orr, and it embraced 315.72 acres. Any survey could locate it. The grantees would clearly have been entitled to a reformation of the deed so as to correct the errors of the scrivener. Or, where the omission is patent and the meaning obvious, it can be cured by construction of the deed by the court. [Briant v. Garrison, 150

Mo. l. c. 667; Deal v. Cooper, 94 Mo. 62; 2 Dev. on Deeds (2 Ed.), sec. 1031a.]

Mere mistakes in description may be corrected and the deed reformed by a court of equity. [Davis v. Briscoe, 81 Mo. 27; 20 Am. and Eng. Ency. Law (1 Ed.), p. 713, et seq. and cas. cit. in notes; 2 Dev. on Deeds (2 Ed.), sec. 1031a.]

Where a deed contains two inconsistent descriptions "that description which the whole instrument shows best expresses the intention of the parties must control." [2 Dev. on Deeds (2 Ed.), sec. 1038.] Ordinarily, references to monuments prevail over calls by metes and bounds. [Id. sec. 1029.] And a specific description generally prevails over a general description, "but whenever possible, the real intent is to be gathered from the whole description, including the general description as well as the particular." [Id. sec. 1039.] So a call for a boundary by the lands of another will be a sufficient description. [Id. sec. 1014.]

In this case the widow intended to convey all the land she acquired under her husband's will. She described it, first, as the lands formerly owned by her husband; second, as the land usually known as the Whitaker farm; third, as containing about 314 acres; fourth, as bounded on the north by lands of Hiram Henderson, on the east by lands of Alexander Summers, and on the west by Isaac Orr; and fifth, as known by the following numbers—calling for quarter sections or fractional quarter sections, and, as above stated, applying to five tracts, only two of which were contiguous, and which aggregated only 161.91 acres.

There are therefore four descriptions which are consistent and harmonious, and which express the true intention of the grantor, and a fifth, which is inconsistent with the other four, inconsistent with the evident meaning and intention of the grantor and which does not convey a connected body of land nor one anything like as large as that called for by the deed.

Under these circumstances the intention of the grantor must prevail and the call for fractional parts of sections must yield to the evident and expressed intention to convey all of the land she acquired under her husband's will, and which was known as the Whitaker farm.

The plaintiffs, therefore, are not entitled to recover any part of such land on the theory that it did not pass to them by the deed of their mother, but that it passed to them as remaindermen under their father's will, and that their right of action did not accrue until the termination of their mother's life estate.

These conclusions cover all the errors assigned by the plaintiffs, not specially, but by necessary implication. It is unnecessary, therefore, to review all the objections to the instructions given or refused.

The judgment of the circuit court is right and it is affirmed. All concur, except *Robinson, J.,* absent.