Carl BOXLEY, Appellant,

v.

Fannie EASTER, Florence Easter Gentry, Hazel Easter Snyder, Walter Easter, Helen Easter Winters and Carol Easter Painter, Respondents.

No. 46582.

Supreme Court of Missouri,

Division No. 2.

Jan. 12, 1959.

Alvin Walker, Princeton, for appellant.

John E. Powell, Princeton, for respondents.

BOHLING, Commissioner.

Carl Boxley sued Fannie Easter, Florence Easter Gentry, Hazel Easter Snyder, Walter Easter, Helen Easter Winters and Carol Easter Painter to determine title to approximately 2½ acres of land immediately east of the Goshen-Modena road in the northeast corner of the southeast quarter of the northwest quarter of Section 14, Township 64, Range 25, Mercer County, Missouri, and for loss of a corn crop allegedly removed by defendants from said land in 1956. The controversy is between devisees of Mrs. Addie B. Lowe, who died January 28, 1956, the widow of David C. Lowe, and results from overlapping descriptions in two devises of Mrs. Lowe's will. The devise to plaintiff was to Ida May Boxley, plaintiff's mother and testatrix' twin sister, for life and to plaintiff in fee simple. Mrs. Boxley predeceased testatrix. The devise to defendants was to Fannie Easter, a sister of testatrix, and her bodily heirs. The other named defendants are children of Fannie Easter. No issue is presented respecting the parties defendant, defendants admitting they are as stated in plaintiff's petition. Consult Brown v. Bibb, 356 Mo. 148, 201 S.W.2d 370. The court made a general finding in favor of defendants and against plaintiff, and decreed that the title to the 2½ acres in dispute was in defendants and that plaintiff had no interest therein.

Plaintiff has appealed and contends it was the intention of testatrix to devise the 2½ acres to plaintiff. Defendants contend contra, and that the description in the devise to plaintiff did not convey any land in said SE¼ of the NW¼.

Each party relies on the deeds and will in his or her respective chain of title. No controversy exists with regard to the parties to the several deeds involved, their respective spouses joining as grantors, although the names are spelled differently at different places in the record and in the several deeds. All deeds were duly recorded and all descriptions mentioned refer to land in said Section 14. We number the transfers for convenient reference elsewhere in the opinion.

1. Said NW¼ was patented to Spartan F. Rhea May 1, 1843.

2. October 20, 1851, Rhea conveyed said NW¼ to Oswald C. Roberts.

3. March 13, 1861, Roberts conveyed said NW¼, except a tract not here involved, to Clark Deshler.

On April 9 and 10, 1862, L. N. Constable, county surveyor, made a survey of part of Clark Deshler's land in said NW¼, marking the corners of his survey with stones as required by Laws 1855, p. 191, § 11 (see § 60.310, RSMo 1949, V.A.M.S.). From his field notes and plat, introduced in evidence, his metes and bounds description commenced in the north boundary line of said Section 14 at the intersection of the north-south subdivision line between the east and west halves of the section, extended west 2 chains and 14 links, and embraced a part of the NE¼ and a part of the SE¼ of said NW¼, conforming, we understand, to the description in the conveyance next mentioned.

4. On August 11, 1863, Clark Deshler conveyed to Oswald C. Roberts the following described land:

"Beginning at the North East quarter section corner on the North boundary of section Fourteen (14) Township sixty-four (64) of Range Twenty five (25). Thence West Two chains and Fourteen Links (2.-14) on the section line. Thence south 7¼

Deg. West Ten chains (10) Thence south Thirteen and Three Fourths (13¾) deg. West Ten chains and Seventy Eight Links (10.78) thence south Twenty deg. West Two chains and Ninety two links (2.92). Thence south seventy two and one-half (72½) deg. East seven chains and Ten links (7.10) intersecting the subdivision line dividing the section North and South thence North with said line Twenty four chains and Ninety two links (24.92) to the beginning corner. Containing Ten acres more or less."

The plat of the Constable survey shows the intersection on said subdivision line to be 15 chains and 5 links north of the center of said Section 14.

5. On December 23, 1870, Roberts conveyed to Elijah Cleary other land "and also a tract of land described as follows to-wit: Commencing (40) Forty rods South of the North East corner of the North West quarter of Section No. (14) Fourteen and running thence West Three chains and Thirty-four links to the center of the public road leading from Goshen to Modena, thence South Thirteen and three fourth degrees West, Ten chains and Seventy-eight links, thence South Twenty degrees West Two chains and Ninety-two links, thence South Seventy-two and one-half degrees East, Seven chains and Ten links, thence North Fourteen chains and Ninety-two links to the place of beginning, Seven and one fourth acres."

The following is a plat of Section 14, Township 64, Range 25, Mercer County, Missouri, referred to in the briefs, outlining the devises involved and the land in dispute:

X indicates the land in dispute. The "devil's lane" is also shown. The distances on the survey and description are stated as follows: 1–2: 40 rods. 2–3: 3 chains 34 links. 3–4: 10 chains 78 links. 4–5: 2 chains 92 links. 5–6: 7 chains 10 links. 6–2: 14 chains 92 links.

6. On October 18, 1900, the Cleary heirs conveyed to David C. Lowe and Addie B. Lowe the S½ of the NE¼ and the S½ of the N½ of the NE¼ and the S½ of the N½ of the N½ of the NE¼ "and Seven and One-fourth acres described as follows to-wit: Commencing forty (40) rods South of the North East corner of the North West Quarter and running thence West Three (3) chains and Thirty four (34) links to the center of the public road leading from Goshen to Modena; Thence South 13¾° West Ten (10) chains and Seventy Eight (78) links; thence South 20° West Two (2) chains and Ninety two (92) links; thence South 72½° East Seven (7) chains and Ten (10) links; *thence East to the West line of the North West Quarter of the North East Quarter;* thence North Fourteen (14) chains and Ninety two (92) links to the place of beginning". (Emphasis ours.) This deed stated 147¼ acres, more or less, were conveyed.

7. On October 18, 1904, Clark Deshler conveyed to Ernest H. Deshler and Edward B. Deshler the N½ of the SW¼ and the S½ of the NW¼ and all of the NE¼ of the NW¼ west of the public road and other land.

The S½ of the NW¼ includes the land in dispute.

8. On July 23, 1908, Ernest H. Deshler conveyed to Edward B. Deshler the N½ of the SW¼ and S½ of the NW¼ and all of the N½ of the NW¼ west of the public road.

9. On January 10, 1918, Edward B. Deshler conveyed to Edgar A. Ross the SE¼ and the N½ of the SW¼ and the S½ of the NW¼ and all of the N½ of the NW¼ west of the public road.

10. On February 28, 1918, Ross conveyed to David C. Lowe and Addie B. Lowe "the Southeast quarter of the Northwest quarter, East of the Public Road, and the Northeast quarter of the Southwest quarter East of the Public Road," and the N½ of the SE¼, except a certain described 3.3 acres.

11. Testatrix devised to Ida May Boxley for life and at her death to Carl Boxley in fee simple the S½ of the NE¼ and the S½ of the N½ of the NE¼ and the S½ of the N½ of the N½ of the NE¼ "and Seven and one fourth acres described as follows commencing forty rods south of the North East corner of the North West quarter and running thence West three chains and Thirty four links to the center of the public road leading from Goshen to Modena thence South 13¾° West ten (10) chains and Seventy Eight (78) links thence south 20° West two (2) chains and ninety two (92) links thence south seventy two and one half degrees East Seven (7) chains and ten (10) Links *thence east to the west line of the North West quarter of the North east Quarter* thence North Fourteen (14) chains and 92 links to the place of beginning, all in * * *" said Section 14. (Emphasis ours.) Testatrix' will, as did the Cleary deed at 6, stated 147¼ acres, more or less, were conveyed.

12. Testatrix next devised to "Fannie Easter and her bodily heirs the southeast quarter of the North west quarter East of the Public road and the north half of the south east quarter (except three and three tenths (3.3) acres south east of the public road in the southeast corner of last named tract (Save and except a forty acre tract this day deeded to Mollie Virden out of the South west corner of the above described land) all in * * *" said Section 14.

The parties agree that the rule for construing wills is well stated in Price v. Gordon, 347 Mo. 354, 147 S.W.2d 609,

614 [6, 7], viz.: "'All courts and others concerned in the execution of last wills shall have due regard to the directions of the will, and the true intent and meaning of the testator, in all matters brought before them.'

"In determining the intention of the testator, we may not rewrite his will. We must consider all words as used in their ordinary sense and meaning. We must determine intent from the testator's standpoint, and in view of circumstances and surroundings known to him." See the cases there cited, including Grace v. Perry, Banc, 197 Mo. 550, 599(I), 95 S.W. 875, 877(1), 7 Ann.Cas. 948, stating the will is to be read as near as may be from testator's standpoint, "giving effect, if possible, to every clause and portion of it, and to this end, if need be, words may be supplied and omitted, and sentences transposed." See also Schee v. Boone, 295 Mo. 212, 243 S.W. 882, 884 [4].

■ Where two provisions of a will are contradictory, that should prevail which most nearly appears to be in accordance with the intention of the testator. See Heard v. O'Dell, 335 Mo. 202, 72 S.W.2d 491, 495 [2, 3]; Bond v. Riley, 317 Mo. 594, 296 S.W. 401, 405 [6, 7]; Cox v. Jones, 229 Mo. 53, 129 S.W. 495, 497(2); 95 C.J.S. Wills § 621, p. 867.

■ In construing deeds, as well as wills, the intention, as gathered from the four corners of the instrument, controls. Korneman v. Davis, 281 Mo. 234, 219 S.W. 904, 907 [3, 4]; Grandy v. Casey, 93 Mo. 595, 600, 601, 6 S.W. 376, 378, 379. It is stated in Utter v. Sidman, 170 Mo. 284, 294, 70 S.W. 702, 705: "The general rule was that, 'if there be a repugnancy, the first words in a deed and the last words in a will shall prevail.' * * *

"The modern rule, which prevails in this state, is much simpler and much more calculated to carry out the wishes of the grantor. The intention of the grantor, as gathered from the four corners of the instrument, is now the pole star of construction. That intention may be expressed anywhere in the instrument, and in any words, the simpler and plainer the better, that will impart it; and the court will enforce it no matter in what part of the instrument it is found."

The conveyances of 1870 at 5 and of 1900 at 6 in plaintiff's chain of title, and the conveyances of 1904 at 7 and 1908 at 8 in defendants' chain of title establish that the east-west division line between the Lowes and the Deshlers extended west from the east boundary of Section 14, along the line dividing said section into north and south halves, to the north-south half section line of said section. The evidence established that the Lowes and the Deshlers disagreed over their division fence, and each had his own fence, creating a "devil's lane" between their lands. This devil's lane was in existence as early as 1912 and extended one-half mile west from the east line of Section 14, then jogged north on the line between the two owners, which would place it on the north-south half section line, and thence west on the line between the owners to the Goshen-Modena road. After testatrix' death, plaintiff, Boxley, erected an electric fence along the south line of the property devised to him. Bert Arnote, engaged in the real estate business, had lived in the neighborhood and knew the land well. He testified the devil's lane extended one-half mile west, then went north less than a quarter mile, and then came out to the Goshen road just almost where plaintiff's electric fence came out to the road. Defendants' witness Elmer Easter, husband of Fannie Easter, testified the land was "laying idle" this year—1957. Arnote testified that the land in dispute was not being farmed this year, was not over 3 acres in area, and was south of the quarter section line. There was testimony from other witnesses to like effect, including plaintiff's

witness Lilburn Bain, who had worked for the Deshlers and on their part of the devil's lane. He placed the house and buildings on the Cleary (later Lowe) land in the southwest corner of the 7¼ acres and the devil's lane right south of the house.

Plaintiff and defendant agreed to have Joseph Stewart, county surveyor, survey the land in the Summer of 1956. Mr. Stewart, defendants' witness, testified, as defendants state, that he saw discrepancies in the lines in testatrix' will; that the description in the will does not follow the Constable survey of 1862, except where the description goes north to the place of beginning, and that none of the corners of the Constable survey in the Modena-Goshen road could be found without tearing up the pavement. He stated, when asked on cross-examination whether he had made field notes of his survey, that he regarded what he did as an examination to see how to survey—a tentative survey; that Constable in 1862 had marked the center of the section with a stone, which was still there, and 15 chains and 5 links north of it Constable set a rock, and when witness "measured up that distance the rock was laying loose and we reset it," but witness did not run the line on north because of a growing corn crop.

Later, plaintiff had C. H. Triplett, an engineer with the State Highway Department and a registered land surveyor, make a survey, and a plat of his survey. The field notes and plat follow the description of the 7¼ acres in testatrix' will. As we read his testimony, the description in the will "thence South seventy two and one half degrees East Seven (7) chains and ten (10) Links" would intersect the north-south half section division line approximately 325 feet south of the south line of the NE¼ of the NW¼ of Section 14, and would not, as called for in testatrix' will, intersect the "west line of the North West quarter of the North east Quarter."

When a conflict exists in the description of the land conveyed with respect to monuments, distances or area, said elements ordinarily will govern in the stated order of priority. But, in arriving at the real intent gathered from the whole description Walker v. Garner, 258 Mo. 494, 167 S.W. 955, 959, cited by both parties, states: "The strongest language that can be used is to say that *ordinarily* monuments control metes and bounds, and that *ordinarily* the latter control acreage or quantity."

"Ordinarily references to monuments prevail over calls by metes and bounds. * * * And a specific description generally prevails over a general description, 'but, whenever possible, the real intent is to be gathered from the whole description, including the general description as well as the particular.'" Whitaker v. Whitaker, 175 Mo. 1, 74 S.W. 1029, 1031; Fancher v. Prock, 337 Mo. 1119, 88 S.W.2d 179, 182. Patton v. Fox, 179 Mo. 525, 78 S.W. 804, 806, held the general description prevailed over the description by metes and bounds. See also Kronenberger v. Hoffner, 44 Mo. 185, 194.

"[I]f the land conveyed is sufficiently identified by certain parts of the description, an impossible or senseless course should be disregarded, and the deed sustained." 26 C.J.S. Deeds § 103, n. 39, p. 895; § 90 c, p. 837; § 30 h, p. 656; Walker v. Garner, supra, 167 S.W. 959 [2]; Shewalter v. Pirner, 55 Mo. 218, 232; Fancher v. Prock, supra; Porter v. Robinson, Mo., 29 S.W.2d 133, 135 [3]; Rosenberger v. Wabash R. Co., 96 Mo.App. 504, 507, 70 S.W. 395.

There is no merit in defendants' argument, based on the call in testatrix' will *"thence east to the west line of the North West quarter of the North east Quarter,"* that no land south of the north line of the SE¼ of the NW¼ passed to plaintiff under the will. What is said also applies to the same call in the deed of the Cleary heirs

to the Lowes. Following the courses and distances in the transfers of the 10 acres by Clark Deshler to Oswald C. Roberts (see 4) and of the 7¼ acres by Roberts, the Cleary heirs, and by testatrix' will (see 5, 6 and 11), it is obvious that the call "thence east to the west line of the North West quarter of the North east Quarter" is a false call and should be rejected. This, because the courses and distances of the preceding calls place the starting point for said call to the east in and south of the north line of the southeast quarter of the northwest quarter of said Section 14, and it is impossible by proceeding thence south 72½° east to intersect or reach the west line of the northwest quarter of the northeast quarter. Surveyor Constable, according to his field notes and plat, set a stone 15 chains and 5 links north of the center of Section 14 on the north-south subdivision line of Section 14. Surveyor Stewart, defendants' witness, testified he found this stone when he measured 15 chains and 5 links north of the stone placed at the center of the section by Constable. Surveyor Triplett placed the intersection of his survey on the north-south division line approximately 325 feet south of the south line of the northeast quarter of the northwest quarter of Section 14. The testimony regarding the location of the devil's lane and the house and buildings on the Cleary (later the Lowe) land corroborates this conclusion.

■ Clark Deshler parted with his title to whatever was conveyed in the northwest quarter of Section 14 by his deed of 1863 to Oswald C. Roberts (see 4) and the part thereof described as 7¼ acres passed by mesne conveyances to testatrix and her husband in 1900 (see 5 and 6). Hence, the later deeds of Clark Deshler and his successors in title at 7, 8, 9 and 10 did not pass the title to said 7¼ acres because none of said grantors had the title to said 7¼ acres at the time of their respective deeds. Kellogg v. Mullen, 45 Mo. 571, 572; Van Amburgh v. Randall, 115 Mo. 607, 22 S.W. 636; 11 C.J.S. Boundaries § 60, p. 632; 16 Am.Jur. 644, § 357.

Defendants' position in the trial court of a straight chain of title from the time the land was patented to the date of the death of the testatrix ignores Clark Deshler's deed of 1863 to Roberts.

■ We agree with the testimony of Surveyor Stewart that the description of the 7¼ acres in testatrix' will does not follow the Constable survey of 1862. The same observation may be made with respect to the description of the 7¼ acres in the deeds of Roberts to Elijah Cleary of 1870 and of the Cleary heirs to testatrix of 1900 (see 5 and 6), but the deed of Edgar Ross of 1918 to testatrix and her husband (see 10), purporting to pass the title to all the land east of the public road in the southeast and northeast quarters of the northwest quarter, was effective to pass the title to any land in said quarter quarter sections east of said road embraced in the 7¼ acres mentioned in testatrix' will not theretofore existing in testatrix and her husband. Thereafter, the devil's lane fence ceased to exist. At the time of her death, testatrix held the title to the 7¼ acres, and her description of the 7¼ acres is a particular description whereas her devise to the defendants is a general description. The calls in the descriptions in testatrix' chain of title and her will to the 7¼ acres, disregarding the false calls, when considered in connection with the call in Clark Deshler's deed to Oswald C. Roberts (see 4) reading "intersecting the subdivision line dividing the section North and South" and thence north on said line to the place of beginning, necessarily embraced some land in said southeast quarter of the northwest quarter to include an area of 7¼ acres and to include a total stated area of 147¼ acres in the devise to plaintiff. The description in the devise to defendants follows the description of the land so devised

found in the deed from Ross to the Lowes, and does not attempt to state the area involved in the devise. Consult Korneman v. Davis, 281 Mo. 234, 219 S.W. 904, 907 [3, 4]; Walker v. Garner, supra. The description in testatrix' devise to plaintiff follows the description in the deed of the Cleary heirs to the Lowes. As we read the transfers and the testimony in the record, testatrix must have intended to devise to her twin sister for life and to plaintiff in remainder the land she and her husband received from the Cleary heirs, that is, the land bounded at one time by the devil's lane on the south with the buildings on the 7¼ acres described in said deed, and overlooked the overlapping of the descriptions in the deeds and the two devises in her will here involved. We so conclude.

Plaintiff rented the land in dispute in 1956 for one-half of the corn crop. It appears that the husbands of two of the defendants harvested plaintiff's share of the crop. Plaintiff does not direct our attention to, nor do we find, any evidence connecting any defendant, that is, Fannie Easter, the life tenant, or any of her heirs apparent, the remaindermen, with the conversion of this corn. We find no substantial evidence for a judgment against any defendant on this issue.

The judgment and decree are reversed with directions to quiet the title in plaintiff in conformity hereto and to dismiss plaintiff's claim against defendants for the conversion of plaintiff's share of the corn grown in 1956 on the land in dispute.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.