### LOUIS C. WALKER v. JAMES D. GARNER, Appellant.

Division Two, May 26, 1914.

1. **CONVEYANCES: Discrepancy: Metes and Bounds: Quantity: Partition.** Where the report of commissioners, upon which a decree in partition was based, set off to the widow for dower and homestead eighty-two acres, to an heir thirty-three acres, and to another heir sixty-eight acres, and the surveyor for the commissioners, preparatory to making the report, surveyed the tract and set stakes at points inclosing eighty-two acres for the widow, it is *held,* despite the fact that the metes and bounds set out in the report called for a larger acreage, that the allotment was for eighty-two acres—the fact being also that to allow to the widow the larger allotment would necessitate a reduction of the other shares described in the report as including thirty-three acres and sixty-eight acres.

2. ———: ———: **Ejectment: Relief at Law.** If a part of a description of lands is inconsistent with other parts, and the

remaining part is sufficient to designate the land, a court of law will in an ejectment suit disregard the false description and give effect to the other calls without sending the parties into equity to correct the instrument.

3. ——————: ——————: Metes and Bounds: Quantity: Monuments: Fences. Where a discrepancy exists between the metes and bounds and the call for acreage in a report of commissioners in partition, and there is evidence that the surveyor for the commissioners set stakes and defendant and another replaced the stakes with stones, and the evidence is uncontroverted that a fence was long ago placed on the line of the stones, where it still stood at the time of the trial, the call for acreage, coinciding with the position of the fence, will prevail over the description by metes and bounds.

4. ——————: ——————: ——————: ——————: Sheriff's Deed: Puchaser's Title. Where the interlocutory decree in a partition suit described the land affected as the homestead and dower allotted to a widow by an earlier decree in partition, and described it as amounting to eighty-two acres, although the metes and bounds given would have inclosed more than eighty-two acres, and the sheriff's deed to the purchaser at the partition sale gave the same metes and bounds with no call for acreage, it is *held* that the deed passed only the quantity comprised in the homestead and dower tract, or eighty-two acres, the widow having long held possession of that actual amount of land under the earlier decree in partition. [FARIS, J., and WILLIAMS, C., dissenting.]

Appeal from Clay Circuit Court.—*Hon. Francis H. Trimble,* Judge.

REVERSED.

*James W. Garner* and *Martin E. Lawson* for appellant.

(1) The strip of land now in question could not be sold by the sheriff in any event, because the court had no jurisdiction to order it sold. The pleadings in this case admit that appellant alone was in possession adversely of the strip sued for when the partition suit of Chappell v. Garner was filed. Therefore, not being held in common, and the other parties having no possession in said strip, it could not be sold in par-

tition. Chamberlain v. Waples, 193 Mo. 96; Estes v. Nell, 140 Mo. 639. (2) The respondent Walker is conclusively presumed to have had notice of the proceedings in the case in which the land was sold, and of the recital in the pleadings and proceedings therein as to the number of acres set out and ordered to be sold, and that it was the homestead and dower tract set out to Letitia A. Garner. The interlocutory judgment controls what land may be sold or divided. The authority of the sheriff was limited thereby. Swisher v. Pemberton, 249 Mo. 209; Loring v. Groomer, 110 Mo. 642; Clark v. Cooper, 148 Mo. App. 230. (3) The respondent cannot rely upon estoppel, because he does not claim to have been misled by the proceedings, nor does he claim that the appellant said or did anything to mislead or deceive him. The court records were open to respondent. Bates v. Perry, 51 Mo. 449; Throckmorton v. Pence, 121 Mo. 50; Konta v. Stock Exchange, 189 Mo. 39. (4) To estop appellant, respondent must have relied upon the actual description set out in the notice of sale and must have been misled thereby. This was a judicial sale and the record showed the true facts. Respondent knew the dower tract and where the fence was. He heard announcement that it was the homestead and dower tract of Letitia A. Garner, containing 82 acres, or as he says "about 82 acres," after the notice of sale was read and in explanation thereof, and prior to his bids at the sale. Roseneranz v. Dry Goods Co., 175 Mo. 518; Harrison v. McReynolds, 183 Mo. 533; Konta v. Stock Exchange, 189 Mo. 26. (5) The appellant is not estopped to set up the mistake of the surveyor in making the plat which did not actually show the land set out, by reason of having been a party to the partition suit of Chappell v. Garner. There was no false representation or concealment of facts made by Garner, with knowledge of the falsity. Mere silence, even had he known of the error, would not estop him. Blodgett

v. Perry, 97 Mo. 263; Bright v. Miller, 95 Mo. App. 270. (6) A partition sale is a judicial sale and a purchaser buys only what can be sold under the decree. Burnham v. Hilt, 143 Mo. 421; McNamee v. Cole, 134 Mo. App. 266; Swisher v. Pemberton, 249 Mo. 209; 17 L. R. A. (N. S.) 1011. (7) To estop appellant from setting up title to his own property it must appear that he was guilty of fraudulent conduct or was grossly negligent, and that Walker, ignorant of the facts, relied on appellant's acts or statements. Bright v. Miller, 95 Mo. App. 270. (8) Silence, without knowledge, works no estoppel. Garner was ignorant of error, and made no statement at the sale. The only statement made was by the attorney for plaintiff in that suit. Harrison v. McReynolds, 183 Mo. 533; Spence v. Renfro, 179 Mo. 417. (9) The sale of land by the sheriff, of land not included in the decree of sale in Chappell v. Garner, did not convey any title thereto. The decree expressly ordered the late homestead and dower of Letitia A. Garner sold. Burnham v. Hilt, 143 Mo. 414; Swisher v. Pemberton, 249 Mo. 200; Martin v. Pace, 6 Blackf. 99; Peake v. Renwick, 33 L. R. A. (N. S.) 413. (10) All the parties at the last partition sale, and the purchaser knew that the homestead and dower tract as set out in the former partition suit was being sold, and they all knew where the tract was, and how it was fenced, and so there was no mistake or misunderstanding between them. Respondent bought to the fence, the true line of the homestead and dower tract, described in the decree. Thompson v. McClernon, 142 Mo. App. 429. (11) Respondent's claim that he bought relying on the description contained in the notice alone, is not reasonable. He knew, and for many years had known the land in question, the dividing fence, and the whole situation. Clark v. Cooper, 148 Mo. App. 230. (12) The plat of the homestead and dower, marked "C," was a part of the report

258 Mo.—32

of the commissioners in the first partition suit, and was referred to in the decree of sale under which respondent bought at the second partition sale. It shows the error on its face. Consequently he had notice of that fact, because the notice of sale referred to the decree, which in turn described the land as that set out as homestead and dower in the first proceeding. Campbell v. Wood, 116 Mo. 196; Cragin v. Powell, 128 U. S. 691.

*Ralph Hughes* and *Simrall & Simrall* for respondent.

(1) The appellant, by accepting the proceeds of the sale in partition, ratified and adopted the sale as made by the sheriff and is estopped from denying that the respondent is now the owner of all the real estate sold by the sheriff at such sale and described in the deed to respondent. Hector v. Mann, 225 Mo. 228; Fischer v. Siekman, 125 Mo. 165; Cadematori v. Gauger, 160 Mo. 352; McClanahan v. West, 100 Mo. 323; Sec. 2596, R. S. 1909. (2) In proceedings in partition the sale is by the act of the parties themselves as well as by a judgment and is not a sale *in invitum* like an ordinary sheriff's sale under execution. It does not matter who are the petitioners, the parties are all before the court in a proceeding for the benefit of all and may be all considered as petitioners or plaintiffs. Pockman v. Meatt, 49 Mo. 345; Cochran v. Thomas, 131 Mo. 258. (3) The land sold in partition in the case of Chappell v. Garner and conveyed to respondent was particularly described by metes and bounds and such description controls, in determining the land conveyed, over a call for quantity found in the petition and decree but not in the notice of sale or in the deed. Hendricks v. Vivion, 118 Mo. App. 417; Campbell v. Johnson, 44 Mo. 248; Baker v.

Clay, 101 Mo. 553. (4) Where a case is tried by the court, a jury being waived, and no declarations of law are asked or given, if there is any substantial evidence to support the judgment it will be affirmed, and questions of fact will not be reviewed. Holker v. Hennessey, 141 Mo. 527; Miller v. Breneke, 83 Mo. 163; Bethune v. Railroad, 139 Mo. 580; Sommer v. Bryson, 168 Mo. App. 335; Jordan v. Davis, 172 Mo. 599. (5) Where appellant testified that the fence was supposed to be on the true line and he was claiming up to the fence because he supposed the fence to be on the true line, his possession though for more than ten years is not adverse. Foard v. McAnnelly, 215 Mo. 372; University v. McCune, 28 Mo. 481.

ROY, C.—This is an ejectment suit in which the plaintiff recovered judgment and defendant has appealed.

In the spring of 1883, the exact date not given, in a partition suit among the widow and heirs of James C. Garner, the commissioners made a report which contained the following:

"Homestead.

"Quantity and quality being by us relatively considered, we first set off and delivered unto said Letitia A. Garner her homestead in all said real estate, including therein the mansion house of said James Connoway Garner, deceased, at the time of his death—to the value of fifteen hundred dollars, which homestead is situated in the county of Clay aforesaid, and consists of the parcel and is meted, bounded and described as follows:

"It is a part of the southwest quarter of section number 33 in township number 54 of range number 32, containing 38 acres, thus bounded, viz.: Beginning at a point on the west line of said section number 33 which is 50 poles north from the southwest corner of said

section number 33, thence running east 80 poles to a point thence north 76 poles to a point, thence west 80 poles to a point on the west line of said section number 33, and thence south on said west line to the point of beginning. To have and to hold the said parcel unto said Letitia A. Garner for and during her natural life as and for her homestead in all the real estate mentioned in said judgment and decree.

"Dower.

"And having set off and delivered the said homestead, and finding that said Letitia A. Garner was, besides, entitled to dower, we did, next, assign, admeasure and deliver unto said Letitia A. Garner, quantity and quality being by us relatively considered, as and for her dower in the real estate mentioned in said judgment and decree, a parcel thereof which we appraised at the value of fifteen hundred dollars, and which parcel is situate in the county of Clay aforesaid, and is meted, bounded and described as follows, viz.:

"It is a part of the southwest quarter of section number 33 in township number 54 of range number 33, thus bounded, viz.: Beginning at the southwest corner of said section number 33, thence running east over the south line of said section number 33 a distance of 108 poles to a point on said south line, thence north 126 poles to a point, thence west 28 poles to a point, said point being the northeast corner of said dower, thence south 76 poles to a point, thence west 40 poles to a point on the west line of said section number 33, and thence south, over said west line, 40 poles to the point of beginning containing 44 acres; to have and to hold the said parcel unto said Letitia A. Garner for and during her natural life as and for her dower in all the real estate mentioned in said judgment and decree.

"And having set off and delivered said homestead and assigned and admeasured and delivered said dow-

er, we did next part, divide, set off and deliver all the residue of all the real estate mentioned in said judgment and decree, first charging the said Mary Simms, Jane Deshon, Amanda Garner and James D. Garner with the amounts ascertained and declared in said order and decree as follows:

## "First.

"We, first, quantity and quality being by us relatively considered, parted, divided, assigned and delivered unto said Louis B. Garner . . .

## "Second.

"We next, quantity and quality being by us relatively considered, parted, divided, assigned and delivered unto the said Amanda Garner . . .

## "Third.

"We next, quantity and quality being by us relatively considered, parted, divided, assigned and delivered unto the said Mary Simms and Richard A. Simms, her husband, in right of the said Mary (having charged the said Mary Simms with the sum of six hundred dollars, as directed by said judgment and decree), the certain parcel of said residue of said real estate appraising the same to be of the value of nine hundred dollars situate in said county of Clay, containing 33 acres, and meted, bounded and described as follows, viz.: It is a part of the southwest quarter of section number 33 in township number 54 of range number 32, thus bounded, viz.: Beginning at the center of said section number 33, thence running west, over the subdivisional line, 80 poles to a point on said subdivisional line, thence south 34 poles to the northeast corner of said homestead tract, thence east 28 poles to the northeast corner of said dower tract, thence south over the east line of said dower tract 46 poles to a point in said east line, thence east 52 poles to a point

on the subdivisional line, and thence north 80 poles over the subdivisional line to the point of beginning: To have and to hold the said parcel, in severalty, unto said Mary Simms and Richard A. Simms, her husband, in right of said Mary, forever, as and for their full share, part and purpart of all the said residue of said real estate.

## "Fourth.

"We next, quantity and quality being by us relatively considered, parted, divided, assigned and delivered unto said James D. Garner (having charged him with the sum of three hundred dollars as directed in said judgment and decree), the certain parcel of said residue of said real estate, appraising the same to be of the value of twelve hundred dollars, situate in said county of Clay, containing 68 acres, and meted, bounded and described as follows, viz.:

"It is the southwest quarter of the southeast quarter, and a part of the southwest quarter of section number 33 in township number 54 of range number 32, the whole parcel bounded as follows, viz.: Beginning at a point on the south line of said section number 33, which is distant 108 poles from the southwest corner of said section number 33, which point of beginning is the southeast corner of said dower tract, thence running east over said south line, a distance of 132 poles to the southeast corner of said southwest quarter of the southeast quarter of said section number 33, thence north, over the subdivisional line, 80 poles to the northeast corner of said southwest quarter of the southeast quarter of said section number 33, thence west 132 poles to a point on the east line of said dower tract, thence south, over said east line, 80 poles to the point of beginning. To have and to hold the said parcel, in severalty, unto said James D. Garner, his heirs and assigns, forever, as and for his full share,

part and purpart of all the said residue of said real estate.

## "Fifth.

"And next, quantity and quality being by us relatively considered, we parted, divided, assigned and delivered unto said Jane Deshon and Thomas C. Deshon, her husband, in right of said Jane . . .

"And we annex hereto (and make part hereof) plats of the said lands situate in said counties of Clay and Clinton, respectively marked C and D, showing the location of said lands, their outlines, the said homestead, dower, and parcels assigned, with their situation with reference to each other, and other matters illustrative of this report.

"And we further make report that in the execution of our trust under said judgment and decree and in the making and acknowledgment of this report we were engaged three days; that we were compelled to employ the professional services of Reuben J. Stepp, Surveyor of Clay county, in making measurements and areas and running lines, for the period of three days . . . . ."

The plat referred to is as follows: [See dissenting opinion, *post,* p. 518.]

That report was confirmed by the court, and a decree in partition was made in accordance with it.

Upon the death of the widow, one of the heirs brought suit for partition of the land allotted to her, in which the other heirs, including this defendant herein, were made parties. The petition in that case contained the following:

"That thereafter a proceeding was instituted in the circuit court of Clay county, Missouri, lawfully having jurisdiction thereof, to set out the homestead and dower of said Letitia A. Garner in all the real estate of said deceased, which proceeding was entitled 'Letitia A. Garner et al. against James D. Garner

et al.,' and therein such proceedings were had, that thereafter commissioners were appointed, qualified and performed the duties assigned by the court, setting out to said Letitia A. Garner, the following real estate, in Clay county, Missouri, towit: For her homestead, part of the southwest quarter of section number 33 in township number 54 of range number 32 containing 38 acres, thus bounded, viz.: Beginning at a point on the west line of said section number 33, which is 50 poles north from the southwest corner of said section number 33, thence running east 80 poles to a point, thence north 76 poles to a point, thence west 80 poles to a point on the west line of said section number 33, thence south on said west line to the point of beginning.

"For her dower: Part of the southwest quarter of section number 33, in township number 54 of range number 32, thus bounded, viz.: Beginning at the southwest corner of said section number 33, thence running east over the south line of said section number 33 a distance of 108 poles to a point on said south line, thence north 126 poles to a point thence west 28 poles to a point, said point being the northeast corner of said dower, thence south 76 poles to a point, thence west 80 poles to a point on the west line of said section number 33, thence south over said west line 50 poles to the point of beginning, containing 44 acres. The two tracts thus set out to Letitia A. Garner, being thus together described, towit: Beginning at the southwest corner of section number 33, in township number 54, of range 32, and running thence east 108 poles, thence north 126 poles, thence west 108 poles, and thence south 126 poles to the beginning, all in Clay county, Missouri.

"That said court approved the action of said commissioners and the same became binding forever, all the above-named heirs being made parties thereto, duly

served with process, and each receiving his or her share of the real estate of deceased.

"Plaintiffs further state that Letitia A. Garner entered into possession of said real estate so set out to her and held the same during her lifetime, which ended at her death on October 18, 1906; that subject to said lifetime interest the five children of James C. Garner, deceased, owned said real estate in fee simple by inheritance as aforesaid."

The defendant in this case made default in that case, and interlocutory decree of partition and order of sale entered, in which the land was described and the facts found as in the petition. At the sale made under that order the plaintiff herein became the purchaser and received sheriff's deed for the land. In the notice of sale and in the deed the land was described as follows:

"Beginning at the southwest corner of section No. 33, in township No. 54, of range No. 32, and running thence east 108 poles, thence north 126 poles, thence west 108 poles, thence south 126 poles to the beginning."

It will be noticed that there is a discrepancy between the metes and bounds of the dower tract as described in the above documents. If the metes and bounds are to control the construction, there are 47.05 acres in the dower tract; and the amount allotted to the defendant is reduced to 66 instead to 68 acres, and Mrs. Summers' tract is reduced from 33 to 31.95 acres. On the other hand, if the acreage is to control the metes and bounds as shown in the report of the commissioners the east line of the dower tract is only 104 instead of 108 rods east of the section line.

There is a fence separating the enclosures of plaintiff and defendant. That fence runs in a straight line, and is 61 feet less than 108 poles east of the section line at the north end of the dower tract, and is 40 feet less than 108 rods east of the southwest cor-

ner of the section.   The controversy is over the south end of that strip.

The petition herein described the land in controversy as follows: "Beginning at a point 108 poles east of the southwest corner of section 33, township 54, of range 32, thence north 1101.21 feet, thence west 51.12 feet, thence south 36 minutes east 1101.30 feet, thence east 40 feet to the point of beginning, containing about one and one-seventh acres more or less."

The answer, after setting out the proceedings in the first partition and the filing of the report of the commissioners therein, proceeds as follows

"That said action of said commissioners was approved and confirmed by this court on the first day of September, 1883; that the said commissioners marked off and drove stakes at the corners of said tracts; that one stake was driven at the southeast corner of said dower tract, and another stake was driven at the northeast corner thereof as laid off and designated by said commissioners; that a fence was built from one of said stakes to the other along the east line of said dower tract and stones were planted in place of said stakes as permanent markers of said line; that the fence has remained to this day in the same place as it was originally built in 1883; that the stone at the north end of said fence is still standing but that at the south end has been destroyed by parties working roads; that when Reuben Stepp, then county surveyor, attempted to describe the lands thus set out for said commissioners, he made a mistake in describing the said dower tract by which the same was made to extend beyond the tract actually set out, and by which, instead of containing forty-four acres as desired by and set out by said commissioners it was made to appear to contain by its description forty-seven and 5/100 acres, although it was plainly marked "forty-four" acres; that the length of the south and north lines of said tract set out for dower was erro-

neously stated by said surveyor, and did not state the action of said commissioners; said surveyor also erred and by said description placed said land in range thirty-three, when it was in range thirty-two.

"The defendant further states that immediately after the said report of commissioners was confirmed, Letitia A. Garner (who was the mother of this defendant) took actual and exclusive possession of said dower and held the same openly and adversely, continuously and peaceably from that time to the time of her death, October 18, 1906; that after her death a suit was filed in this court to partition and sell said dower and homestead lands above described, which was entitled "Amanda Chappell et al. v. James D. Garner et al. No. 5910," in which said land was ordered to be and was sold for the purpose of partition, and at said sale plaintiff Louis C. Walker bought the same; that at the time of the public sale by the sheriff in said partition suit, said fence along the east line of said dower tract was in place as originally built on the line marked out by said commissioners, correctly showing the east line thereof, and that plaintiff knew said land intimately and had so known it for many years, and knew he was buying only to said fence; that the order of sale under which plaintiff bought as aforesaid described said homestead tract as being 38 acres and said dower tract as being 44 acres, and at said sale it was publicly announced before the sale that the whole tract to be sold contained 82 acres, and that the tracts lying west of said fence so sold contain more than 82 acres.

"Defendant further states that in the same suit in which said homestead and dower were set out, as aforesaid, to Letitia A. Garner, there was also set out to the children of James C. Garner, deceased, different lands as their shares in said estate; that the lands lying east of said dower tract were set out to defendant James D. Garner and Mary Simms, defendant getting the south eighty poles of said tract east of said dower

tract and Mary Simms the residue thereof; that the line so marked out by said commissioners and designated by stakes (being the line on which said fence was built) was agreed to between said James Garner, Mary Simms and Letitia A. Garner as being the true line between them, and they built their said fence accordingly and during all the years since intervening have recognized said fence as such true line, and have each claimed to own the land up to such fence; that each such owner and those claiming under them (except this plaintiff) have had and held possession up to said fence adversely, openly, continuously and peaceably since said partition was made, towit, for more than twenty-five years; and that plaintiff now owns the lands set out to said Mary Simms.

"Defendant further states that all the heirs of James C. Garner knew the line of the lands set out to Letitia A. Garner aforesaid, and also the line of the lands set out to said James D. Garner and Mary Simms, and ever since 1883 concurred in said agreed line as being the true line between said lands, and that plaintiff holds under said heirs and holds their title only, and is estopped to claim beyond said true line as marked by said fence.

"Wherefore, defendant, having fully answered, asks to go hence without day, and with his costs herein expended.

"And defendant prays that the description in the said report of commissioners setting out dower to said Letitia A. Garner may be reformed and corrected so as to correctly show the actual facts and so as to describe the land actually set out to her by them; and for all further proper relief in the premises."

The reply denies the facts alleged in the answer except as admitted in the reply, and alleges that the defendant herein was a party to the second partition and received his share of the proceeds of the sale of

the land and is estopped from claiming any interest in the land.

Shortly after the purchase by the plaintiff, the defendant herein desired to get a description of a graveyard and employed the county surveyor, Mr. Barnes, to survey it. In doing so he ran the south boundary of the dower tract and found the fence to be less than 108 poles from the corner of the section. Mr. Walker then had the line run north and south 108 poles east of the section line, fully revealing the discrepancy as above stated.

Mr. Barnes testfiied for the plaintiff that he surveyed the land and found a stone at the north end of the fence and further testified:

"The fence did not run straight south from that point to the south line of the section. It varied thirty-six minutes to the east. I did not find a stone at the south end, nor any stone eighty poles north of the south end, where an old fence had been. I didn't specially look for a stone at that point. The fence was a barbed wire fence and seemed to be old, had probably been there eight or ten years."

The defendant testified that the surveyor at the time of the partition in 1883 planted stakes on the east line of the dower tract at the north and south ends thereof, and also one at the northwest corner of defendant's tract, and that in that same spring or summer, he and Mr. Hall planted rocks where those stakes were, that a fence was built that summer on the line of those rocks, and that the fence had been in the same place ever since. He stated that the two north rocks were still there, and that the one at the south end had been removed by the opening and grading of a road. He also testified that at the partition sale the description of the land was read and that the announcement was made that it contained eighty-two acres, and that the plaintiff had always lived about three-quarters of a mile west of him.

The plaintiff testified as follows:

"At the sale, Mr. Lawson read the description of the land, and he said there was about eighty-two acres in that boundary. He read the boundary first and said it contained about eighty-two acres. I wasn't paying for eighty-two acres, I was buying the eighty-five acres, what I figured it. I didn't pay any attention to the statement as to there being about eighty-two acres. I didn't make any statement to Mr. Garner about an error at the time of the sale. I didn't see any mistake."

Also: "I didn't look at the decree in this court or ask anybody else to look it up for me. I never saw nobody. I seen the notice in the newspaper. I had lived up there for a great many years. I knew of the tract that was being sold. I had been over it. I knew where the fences were around it.

"Q. When you bid, you bid with the idea you were getting the tract east of the fence? A. When I bid I was counting on the metes and bounds. I didn't know whether it would run over the fence or which side, I was paying no attention to the fence or where it was."

I. We are of the opinion that the report of the commissioners setting out the homestead and dower of the widow should be construed so as to limit the dower by a line on the east so drawn as to enclose in the dower tract just forty-four acres, making the homestead and dower together just eighty-two acres.

**Conveyances: Discrepancy.**

We are aware that it was said by BARCLAY, J., in Baker v. Clay, 101 Mo. l. c. 558, "It is an accepted rule of construction that metes and bounds in a description control a call therein for acreage." That case cites Campbell v. Johnson, 44 Mo. 247, where it was said that quantity "aids, but ordinarily does not control, the description of the granted premises." In

Whitaker v. Whitaker, 175 Mo. 1. c. 11, it was said, "ordinarily, references to monuments prevail over calls by metes and bounds." The strongest language that can be used is to say that *ordinarily* monuments control metes and bounds, and that *ordinarily* the latter control acreage or quantity. We fully agree that, in the absence of a reason to the contrary, metes and bounds should control the call for quantity.

Devlin on Deeds (3 Ed.), vol. 2, sec. 1012, says: "The court will not resort to arbitrary rules of construction, if, without so doing, the intention of the parties can be ascertained. The deed and its descriptive clauses will be construed as any other contract would be. When a doubtful description is to be construed, the court should endeavor to assume the position of the parties, the circumstances of the transaction should be carefully considered, and in the light of those circumstances, the words should be read and interpreted."

In Jamison v. Fopiano, 48 Mo. 195, the court said: "In the construction of deeds, words are not the principal thing, but the intent and design of the parties; and therefore, when there are any words in a deed that appear repugnant to the other parts of it, and to the general intention of the parties, they will be rejected. [4 Greenl. Cruise, 307.]"

In Shewalter v. Pirner, 55 Mo. 1. c. 232, it was said: "It is very true, that natural or known monuments will control courses and distances; but it is equally true, that where there is a false call, demonstration or description in a deed, and the false description can be rejected and leave a sufficient description to identify the land, the false description will be rejected, and the remainder of the description, being sufficiently certain, will be sufficient to pass the land. [Cooley v. Warren, 53 Mo. 166.]"

In Patton v. Fox, 179 Mo. 1. c. 533, it was held that the general description ought to prevail over the description by metes and bounds.

In Mitchner v. Holmes, 117 Mo. 185, there was a discrepancy between the metes and bounds written out in the report of commissioners in partition and the plat filed with the report and made a part of it. This court said (l. c. 206): "It is not open to doubt that the commissioners filed a plat with their report, from which, as well as from this report, it most clearly appears that they intended to allot to Thomas Lockridge and each of his brothers and sisters seventy-two acres of land. It is, we think, important to bear this in mind. They report that they did allot to each child seventy-two acres; and they attempt to describe the same by metes and bounds.

"It is plain that they divided the land into tracts of seventy-two acres each, and then assigned one share to each heir. As each heir was entitled to an undivided one-fifth it was their duty to give each one-fifth, and as there was just three hundred and sixty acres to divide, it is impossible to shut our eyes to the intention to give each his or her seventy-two acres."

In Presnell v. Headley, 141 Mo. 187, the acreage was considered and the length of one line given in the metes and bounds was rejected. In Whitaker v. Whitaker, 175 Mo. l. c. 11, this court said: "Where a deed contains two inconsistent descriptions 'that description which the whole instrument shows best expresses the intention of the parties must control.' [2 Dev. on Deeds (2 Ed.), sec. 1038.] Ordinarily, references to monuments prevail over calls by metes and bounds. [Id., sec. 1029.] And a specific description generally prevails over a general description, 'but whenever possible, the real intent is to be gathered from the whole description, including the general description as well as the particular.' "

With those authorities before us, we will examine the report of commissioners, including the plat, and determine its meaning. We are mathematically certain that there was a mistake either in the areas of

three tracts or in the width of the dower tract. Section 2582, Revised Statutes 1909, provides that the commissioners shall allot the several shares "quantity and quality relatively considered." The report of the commissioners now being considered states that they considered the quantity and quality of the several parts allotted.

If the full width of 108 poles is given to the homestead and dower tract, it will contain 85.05 acres, while, on the other hand, defendant's tract of 68 acres will be reduced to 66 acres, and the Simms tract will be reduced from 33 acres to 31.95 acres. We entertain no doubt when we say that the intent, patent on the face of the report, is that the homestead and dower shall be 126 poles long from north to south and wide enough to contain 82 acres, and that defendant should have 68 acres, and Simms 33 acres as located on the plat.

It is not necessary that the report should be corrected, as a court of law will declare the meaning of the report without driving the parties to a court of equity to correct it. [West v. Bretelle, 115 Mo. l. c. 659; Evans v. Greene, 21 Mo. 208.] If part of the description is inconsistent with other parts, and the remaining part is sufficient to designate the land sold, the remedy is afforded at law by disregarding the false description and giving effect to the other calls.

Ejectment: Relief at Law.

II. There is another reason which prevents plaintiff's recovery. In Kronenberger v. Hoffner, 44 Mo. l. c. 192, the court said: "Where there are no express calls that determine a line with certainty, evidence *aliunde* is admissible to show where the line was actually run to which the deed refers, or to which it must have reference; and its location, so fixed by extrinsic evidence, will control the courses and distances named in the

Monuments and Fences.

deed or in the survey. The right to prove the true line of the survey to which the deed refers, and which it follows, does not depend upon the rules applicable to ambiguities in written instruments, though it has a strong analogy to latent ambiguities. It is not a question of construction, but a question of fact. There may be no ambiguity, and yet it may be impossible to locate the land without extrinsic information. If it refers to lines and surveys, the lines and angles as actually run and established must be found, and by the best evidence attainable. If the deed calls for known monuments and abuttals, they must be found, and, if destroyed, their location must be proved. If there are no monuments, or they cannot be found, any other legal proof of where the line was actually marked upon the ground is admissible. Field-notes and plats of the surveyor, with the calls for courses and distances, properly authenticated, can be shown, not to make a line, but as evidence of an existing line, and they must yield to other satisfactory evidence of its true location. Among the multitude of authorities are Opdyke v. Stephens, 4 Dutch. (N. J.) 84; Conn v. Penn, 1 Pet. C. C. 511; Ogden v. Porterfield, 34 Pa. St. 191; Younkin v. Cowan, 34 Pa. St. 198.''

The report of the commissioners says, ''We were compelled to employ the professional services of Reuben J. Stepp, surveyor of Clay county, in making measurements and areas and running lines for the period of three days.'' Thus we see that the lines were actually run on the ground. Were they marked on the ground? We say ''yes,'' for the following reasons: Section 7404, Revised Statutes 1879, now section 11323, Revised Statutes 1909, provides the manner in which surveyors shall perpetuate their corners by stones and otherwise. The defendant testified that the surveyor at the time of the partition set stakes to indicate the corners of the dower tract and also his northwest corner on the east line of the dower tract, and he further testi-

fied that he and Mr. Hall that same year planted stones where the stakes were and that the fence was then built on the line of those stones, and has been in the same place ever since. If it be suggested that the defendant is an interested party, and that his testimony should not be made the basis on which to rest the finding and judgment, we say that his testimony may be disregarded and the effect will be the same. The surveyor who made the survey for the plaintiff and was plaintiff's witness testified that he found a stone at the end of the fence at the northeast corner of the dower tract sixty-one feet west of where the corner would be according to the contention of plaintiff. In the absence of a showing to the contrary there is a reasonable presumption that the surveyor placed it there at the time of the partition in accordance with his statutory duty. According to the evidence for the plaintiff, the fence as now located had been there eight or ten years prior to the trial of this case, which occurred in December, 1910. That fence was there long before the death of the widow. There is no evidence that it was ever changed in location or that the rock was ever changed. In Whitwell v. Spiker, 238 Mo. l. c. 638, the court, speaking of monuments of surveys, said: "These, in thickly settled communities, and especially in cities, become obliterated, and their places are supplied by houses, fences and other visible things that have been planted or adopted for that purpose. When this has been done they may be used as landmarks for all, and their removal does not, of course, remove the land that has been bought and sold with reference to them."

By the survey and the report of the commissioners as confirmed by the court, the land assigned to the widow acquired "a local habitation and a name." It was named the homestead and dower. It was given a location on the ground as marked by the surveyor, now indicated by the fence. That fence can be moved

only by showing that the original survey located the line east of the fence, and there is no evidence tending to show such fact.

In Diehl v. Zanger, 39 Mich. l. c. 605, Judge Cooley said, "As between old boundary fences, and any survey made after the monuments have disappeared, the fences are by far the better evidence of what the lines of a lot actually are."

III. Having held that the dower tract did not include any land east of the fence, we proceed to consider whether the result of the sale to the plaintiff in the second partition had the effect in law of vesting in the plaintiff the title to any land east of the fence.

Sheriff's Deed: Purchaser's Title.

The petition in the second partition states that in the first partition suit "such proceedings were had, that thereafter commissioners were appointed, qualified and performed the duties assigned by the court, setting out to said Letitia A. Garner the following real estate in Clay county, Missouri, to-wit:" Then follows a description of the homestead and dower tracts by metes and bounds as in the report of the commissioners, stating that there were thirty-eight acres in the homestead and forty-four acres in the dower tract. It then described both tracts as one by metes and bounds giving the north boundary and the south boundary as 108 poles. That petition then stated that Letitia A. Garner entered into the possession of the real estate so set out to her and held the same during her lifetime, which ended in her death on October 18, 1906. The decree of partition and order of sale found those facts as stated in the petition. It is true that plaintiff's deed and the notice of sale described the land by metes and bounds, giving it a width east and west of 108 poles without stating the quantity. That does not enlarge the plaintiff's rights. Those rights can be no broader than the decree on which the sheriff's deed is

based. When the plaintiff purchased the land he was bound to take notice of the proceedings in partition leading up to his purchase. By an examination of the decree under which he purchased he would have found that the land which was to be sold was the land allotted to the widow and which had been taken possession of by her.

In Rutherford v. Tracy, 48 Mo. 325, the land was described as lot 3 in block 87 of a certain town, followed by metes and bounds which included less than the lot. It was there said (1. c. 329), "The designation of the lot by its number must be regarded as the prominent object or monument; and where there is uncertainty, the monument must prevail over the description by courses and distances."

So we hold in this case that the record shows it was the intention to partition the homestead and dower tracts. Those tracts, as we have held, did not include anything east of the fence. Their location on the ground was well known. It was well known to all concerned, including the plaintiff, that the defendant was in exclusive possession of the land east of the hedge. The distance of 108 poles was used not because the plaintiff in the second partition suit claimed anything east of the fence, but because that erroneous distance was taken from the description in the report of the commissioners. The plaintiff testified that he did not know at the time of his purchase that the metes and bounds would run east of the fence. So far as the evidence shows no one knew it. We are not to be understood as holding that such knowledge would have made any difference. We call attention to it in order to show that the intent was to partition the homestead and dower tracts and nothing else, and that the call for 108 poles was a false call and should be rejected. The judgment is reversed.

PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All concur, except *Faris, J.*, who dissents, and concurs in the opinion filed by *Williams, C.*

WILLIAMS, C.—Plaintiff, having acquired title by purchase at partition sale, brings ejectment to recover possession of a portion of the land so purchased. The land here involved is a narrow strip 1101.21 feet long, 51.12 feet wide at the north end and 40 feet wide at the south end and contains about one and one-seventh acres. Defendant here was a party defendant to said partition suit. The situation can be more readily understood by reference to the following plat marked "C."

The land involved in this suit is shown on the plat as lying between the dotted and heavy line extending from "X" to "Y." In 1882, one James Conoway Garner (the common source of title) died intestate, owning all the land shown on said plat. He left surviving him a widow, Letitia A. Garner, and a number of children, including James D. Garner (defendant herein). In 1883, Letitia A. Garner, widow, and some of the heirs, as plaintiffs, brought suit against said James D. Garner and others to have the homestead and dower of said widow set off and for partition of the remainder of said land. The result of that suit is shown by the foregoing plat. Said plat is a true copy of the original plat filed with the commissioners' report in said partition suit, excepting the dotted line and the letters "X" and "Y" which have been added to show the location of the land involved in this suit. The tracts marked "Homestead" and "Dower" on the plat were set off to the widow as defining her homestead and dower rights in said land. Just east of the dower tract, the tract marked "James Garner" was allotted to the defendant herein as his portion of the land outside of the dower and homestead tracts. The portions allotted to the other heirs also appear upon the plat. Said James Garner and said widow (each building one-half) built a rail fence north and south along the dotted line, presumably on the theory that that was the correct division line between them. After many years the rail fence was removed and a wire fence erected in lieu thereof, approximately on the same line. After the death of said widow in 1906, the remaindermen (heirs of said James Conoway Garner) coming into full ownership of said tracts marked "Homestead" and "Dower," a partition suit was brought by some of the heirs as plaintiffs against James D. Garner (the defendant herein) as defendant. Said James D. Garner as party defendant was duly summoned in

said cause. The interlocutory decree entered in said last mentioned partition suit was in part as follows:

"Now on this 12th day of November, A. D. 1908, come the plaintiffs, by their attorney, as well as the defendants, Henrietta Simms and Alvin H. Simms, by their guardian *ad litem,* William A. Craven, and the defendant, Louis B. Garner, by his attorneys, and the remaining defendants, although duly summoned and three times solemnly called, come not, but herein make default, wherefore judgment ought to be rendered against them; and the parties appearing waiving a jury, this cause is submitted to the court upon the pleadings and proof; and the court, having seen and heard read the petition and the answer of the said guardian *ad litem* of the said defendant Louis B. Garner, and having heard and duly considered the evidence adduced, and being fully advised in the premises, finds that one James C. Garner died in Clay county, Missouri, on or about the 14th day of March, 1882, seized and possessed of two hundred and eighty acres of real estate, a portion of which is hereinafter fully described, intestate and leaving as his only heirs, his widow, Letitia A. Garner, and his five children, Mary A. Simms, James D. Garner, Amanda Garner, Jane T. Deshon and Louis B. Garner; that, thereafter, letters of administration were duly issued on the estate of said James C. Garner by the probate court of Clay county, Missouri, lawfully having jurisdiction in the premises, to James D. Garner, who duly qualified and administered said estate, made final settlement thereof and was discharged; that, thereafter, a proceeding was instituted in the circuit court of Clay county, Missouri, lawfully having jurisdiction thereof, to set out the homestead and dower of said Letitia A. Garner in all the real estate of said deceased, which proceeding was entitled, "Letitia A. Garner et al. against James D. Garner et al.," and therein such proceedings were had that, thereafter, commissioners were appointed, quali-

fied and performed the duties assigned by the court,
setting out to the said Letitia A. Garner the following
described real estate in Clay county, Missouri, to-wit:
For her homestead, part of the southwest quarter of
section No. 33 in township No. 54 of range No. 32,
containing 38 acres, thus bounded, viz.:  Beginning at
a point on the west line of said section No. 33 which is
50 poles north of the southwest corner of said section
No. 33, thence running east 80 poles to a point, thence
north 76 poles to a point, thence west 80 poles to a
point on the west line of said section No. 33, thence
south on said west line to the point of beginning.  For
her dower:  Part of the southwest quarter of section
No. 33 in township No. 54 of range No. 32, thus
bounded, viz.:  Beginning at the southwest corner of
said section No. 33, thence running east over the south
line of said section No. 33 a distance of 108 poles to a
point on said south line, thence north 126 poles to a
point, thence west 28 poles to a point, said point being
the northeast corner of said dower, thence south 76
poles to a point, thence west 80 poles to a point on
the west line of said section No. 33, thence south over
said west line 50 poles to the point of beginning, con-
taining 44 acres,—the two tracts set out to Letitia A.
Garner being thus together described, to-wit:  Begin-
ning at the southwest corner of section No. 33, in town-
ship No. 54 of range No. 32, and running thence east
108 poles, thence north 126 poles, thence west 108 poles,
and thence south 126 poles to the beginning, all in
Clay county, Missouri.

"And the court further finds that said court ap-
proved the action of said commissioners, and the same
became binding forever, all the above-named heirs be-
ing made parties thereto, duly served with process,
and each receiving his or her share of the real estate
of said deceased.

"And the court further finds that Letitia A. Gar-
ner entered into possession of said real estate, so set

out to her, and held the same during her lifetime, which ended at her death on October 18, 1906; that, subject to said lifetime interest, the five children of James C. Garner, deceased, owned said real estate, in fee simple, by inheritance, as aforesaid.''

The decree declares the interest of said James D. Garner to be 537/900ths of said land. The court further found that the land could not be partitioned in kind without great prejudice to the rights and interests of the parties, etc., and ordered ''that said real estate be sold by the sheriff of Clay county, Missouri, for cash,'' etc. The present record contains an admission ''that. all the steps were duly and properly taken to get all parties mentioned'' in said partition suit ''duly and properly in court,'' and ''that all subsequent proceedings in the case are regular, and that the property described in the petition and decree in said partition suit was sold to the plaintiff herein by the sheriff under decree of the court.'' Louis C. Walker (respondent herein) purchased the land for the sum of $8300 and received from the sheriff a duly executed and acknowledged deed describing the land as: ''Beginning at the southwest corner of section No. 33 in township No. 54 of range No. 32 and running east 108 poles, thence north 126 poles, thence west 108 poles, thence south 126 poles to the beginning.'' Appellant received from the sheriff his proper distributive share of the proceeds of said partition sale. The above description is the same as that contained in the interlocutory decree and in the notice of sale published by the sheriff; said description contains the proper description by metes and bounds of the total area of the homestead and dower tracts, as originally described in the commissioners' report in the first partition suit, except it makes no mention of the number of acres contained therein. By reference to the commissioners' report, in the first partition suit, it will be noted that the homestead tract is said to contain thirty-eight acres

and the dower tract is said to contain forty-four acres, making a total of eighty-two acres in both tracts. After said Walker purchased said land at the partition sale, he caused a survey to be made and it was ascertained that the strip of land here involved was east of said division fence and was enclosed as a part of appellant's field. The total land purchased, as described by metes and bounds, contained 85.05 acres; the land purchased by respondent, and lying west of said division fence, contained 82.45 acres. This leaves 2.41 acres of the land lying east of said fence, and of this about 1 1/7 acres comes off of appellant's field, the remainder affecting the Simms tract to the north, which is not involved in this suit.

The petition in the present ejectment suit was in the usual form.

The answer admits the possession of the strip in defendant; then sets out the proceedings in the first partition suit and alleges that in said partition proceedings the survey as actually made fixed the division line between the widow's dower and defendant's allotment at the dotted line and that the stakes of the surveyor were set along the dotted line; that a fence was built along said dotted line and stones were planted in place of said survey stakes; that said fence and stone markers have so remained from 1883 to the present; that the commissioners and surveyor made a mistake in giving the metes and bounds of said dower tract; that it was marked and originally surveyed so that the dower tract contained forty-four acres, whereas the erroneous description made and given, as aforesaid, gives to the dower tract 47.05 acres; that this is further apparent from the discrepancy in acreage of the allotments to the heirs, in comparing the amount of acres marked on each allotment with the metes and bounds thereof. The answer then sets out the proceedings of the last partition suit and alleges that plaintiff was familiar with said dower tract and the

fence bounding the same and bought the land knowing
he was buying the land as bounded by said fence;
that the order of sale in the last partition suit stated
that the homestead tract contained thirty-eight acres
and the dower tract contained forty-four acres and
that it was publicly announced at said sale that the
tract contained eighty-two acres; that Letitia A. Gar-
ner, the owner of the dower estate, and defendant
agreed to the dividing line as surveyed (being the
dotted line on the plat) and built said fence accord-
ingly and have for more than twenty-five years rec-
ognized said fence as the true dividing line and that
defendant for more than twenty-five years has been
in the open, adverse, continuous and peaceable pos-
session of the land here involved; that the other heirs
of said James Conoway Garner, deceased, have, since
1883, concurred in said agreed line. The answer con-
tains a prayer "that the description in said report
of commissioners setting out dower to said Letitia A.
Garner may be reformed and corrected so as to cor-
rectly show the actual facts and so as to describe the
land actually set out to her by them."

The reply contains a general denial; admits pos-
session in defendant; sets out the proceedings in the
last partition suit and alleges plaintiff's purchase of
the land at the partition sale; alleges that defendant
was a party to said partition suit and received his
proportionate share of the proceeds of said sale and
that by reason of said facts defendant "is estopped
from claiming any interest in the real estate herein
sued for."

Plaintiff offered in evidence the pleadings, decree
and record of all the proceedings, including the sher-
iff's deed in the partition suit, which resulted in the
sale of the land to plaintiff. He also offered as a wit-
ness the surveyor who surveyed the land after his
purchase. The surveyor testified concerning the true
dividing line according to the metes and bounds, show-

Walker v. Garner.

ing that the strip here involved was within the description by metes and bounds of the land sold to plaintiff at the partition sale.

Defendant offered in evidence the record entries and the commissioners' report in the first partition suit wherein the homestead and dower tracts were set off and the remainder of the land allotted to the heirs. The defendant in his own behalf testified that he was present on the premises when the commissioners set off the dower and homestead in the first partition suit; that the county surveyor, a Mr. Stepp, at the direction of the commissioners surveyed the different allotments; that stakes were set showing the dividing line between his allotment and the dower tract; that these stakes were removed and stone markers planted in their place and a fence was built along the line shown by the surveyor's stakes; that the present wire fence is in the same location as the original rail fence; that the line as shown by the fence was never questioned until just before this suit was brought; that he had been in possession of the land east of the fence, claiming to own it, ever since the rail fence was built; that he was present at the partition sale at which plaintiff purchased, and that the attorney for the plaintiffs in said partition suit "read off the dimensions and said there was 82 acres, and that the homestead and dower farm, 82 acres, was being sold" and "it was bid on as a body of 82 acres." On cross-examination, he testified that there was never any dispute about the division line until after he had the county surveyor come out to make a survey for a graveyard; the surveyor in locating corners preliminary to making a survey of the graveyard ran the one hundred and eight poles along the south part of the former dower tract and it established "a corner which went beyond the fence I supposed to be the true line;" that, about this time, plaintiff said he knew there was a mistake at the time the land was sold.

Upon being asked by defendant why he didn't tell him, plaintiff replied it was none of his (plaintiff's) business and that defendant should have figured it; defendant further testified that plaintiff had lived in that neighborhood all his life. Mr. Lawson testified for defendant that at the partition sale he "read the printed notice of sale and then announced that this was the sale of the homestead and dower tract that was set out to Mrs. Letitia Garner from the husband's estate and that it contained eighty-two acres." That after the sale was over Mr. Walker (plaintiff herein) and witness figured on the basis of eighty-two acres to see how much the land had cost Walker per acre. Mr. Hulse testified that he helped build the original rail fence in 1883; that Mrs. Garner told him to run the fence along the line of stakes standing there, which he did. Plaintiff testified in rebuttal that prior to purchasing at the partition sale, he read the description of the land in the notice of sale and calculated that the tract contained 85.05 acres; that at the sale he heard Mr. Lawson read the description and announce that it contained "about" eighty-two acres, but that he didn't pay any attention to the statement that it contained "about eighty-two acres; " that he was buying eighty-five acres as he figured it; that he didn't know of any mistake at the time of the sale and did not afterwards tell defendant that he knew of the mistake when the sale was made. On cross-examination he testified that he had known the land for years and knew of the fence but said, "When I bid I was counting on the metes and bounds. I didn't know whether it would run over the fence or which side, I was paying no attention to the fence or where it was. I was counting on 108 rods east, 126 rods north, 108 rods west and 126 rods to the beginning." That he never measured it before purchasing it and never thought of measuring it prior to his purchase; that the first time he became aware that the 108 poles would extend east

of the fence was after the purchase and when defendant had surveyor Barnes run some lines. The sheriff who officiated at the partition sale testified that the land was sold in bulk for so much money; that the description was read at the sale and Mr. Lawson announced that "it was the dower right of Mrs. Letitia A. Garner;" the witness understood that Mr. Lawson said it contained "about" eighty-two acres.

The court found the issues in favor of the plaintiff and entered judgment in favor of plaintiff for possession of the land and one cent damages; found the monthly value of the premises to be one cent and ordered that execution issue to restore the possession of said land to plaintiff. Defendant duly perfected an appeal to this court.

I. The metes and bounds of the land sold to plaintiff at the partition sale are the same as those described in the interlocutory decree and order of sale, and compare accurately with the metes and bounds of the combined dower and homestead tracts as set off to the widow in the original partition suit. It is true that in the original partition suit the homestead tract was further described as containing thirty-eight acres and the dower tract as containing forty-four acres (a total of eighty-two acres), and that this further description was also used in the interlocutory decree in the last partition suit, in which the sale of the land in question was had.

Appellant contends that under this situation, the sheriff had authority to sell only eighty-two acres. We are unable to agree with this contention. The general rule, firmly established by many decisions, is, that when land is particularly and definitely described by metes and bounds, the description by metes and bounds controls over a further recital as to the number of acres. [Orrick v. Bower, 29 Mo. 210; Campbell v. Johnson,

44 Mo. 247; Ware v. Johnson, 66 Mo. 662; Baker v. Clay, 101 Mo. 553.]

The facts of the present case are not such as to create an exception to the above announced general rule but are such as to clearly call for the application thereof. Applying that rule to the facts disclosed, it follows that the sheriff at the partition sale was authorized to sell all the land embraced within the given metes and bounds.

The fact that, after the reading of the description by metes and bounds, it was further announced, orally, at the partition sale that the tract contained eighty-two acres, does not operate to change the conclusion above reached. The oral announcement as to acreage could certainly have no greater effect than had the acreage been contained in the written notice of sale, and would therefore fall within the control of the general rule above stated.

II. It is further contended by appellant that the court erred in not reforming or correcting the description by metes and bounds, given in the report of the commissioners in the first partition suit, so as to embrace only eighty-two acres.

Respondent, in answer to this contention, claims that appellant is estopped or precluded from having such relief here because of the fact that he was a party to the partition proceeding which resulted in the sale and the delivery of the sheriff's deed conveying the land in controversy to respondent herein. The facts relevant to this proposition are set forth fully in the preceding statement. It appears from the facts that the land here in controversy is included within the land conveyed to respondent by the sheriff's deed in partition; that the metes and bounds given in the sheriff's deed were the same as those given in the partition proceedings, and that said deed was not defective in any manner; that appellant, at the time of said parti-

tion sale, was interested in said land and was a party defendant in said partition suit, and received his pro- portionate share of the proceeds of the partition sale.

Under the view that we entertain in the matter, it does not become necessary to determine whether there was in fact a mistake made by the commissioners in describing the metes and bounds of the dower tract in the first partition proceeding. In determining whether appellant, under the facts here presented, is barred or precluded from questioning plaintiff's title under the sheriff's deed in partition, it is not neces- sary to turn to the case leaning on this or analogous questions, it appearing that the statutory law is de- cisive of the proposition. Section 2596, Revised Stat- utes 1909, provides that in partition sales the sheriff shall "make the deed to the purchaser, which shall be acknowledged or proved and recorded in the same man- ner as conveyances made by the sheriff of lands sold under execution, *and shall be a bar against all persons interested in such premises who shall have been par- ties to the proceedings,* and against all persons claim- ing from such parties, or either of them," etc.

Whether plaintiff would have been entitled to this relief in a suit against the other parties to the original partition suit, or whether the result in the present suit would have been different had respondent, at the time of the partition sale, been apprised of all the facts which appellant now gives in testimony tending to show a mistake in the first partition proceedings, we will not determine, because neither of said situations is here involved, but we have no hesitancy in saying that, under the present facts, when viewed in the light of the above statutory rule, appellant is barred from setting up or seeking such relief as against the rights accruing to plaintiff as purchaser at said partition sale.

III. Appellant further contends that he was in the adverse possession of said strip of land, claiming

258 Mo.—34

to own the same, at the time of the last partition suit, and that, therefore, that portion of the land could not be partitioned. As to this point, it is sufficient to say that defendant was a party to said partition suit and that he should have raised that question there. Having failed to successfully raise and establish that point in the partition suit he is now barred from raising it in this proceeding. To hold otherwise would be to ignore the plain meaning and effect of the above quoted statute.

The judgment should be affirmed. *Faris, J.,* dissents from the opinion of *Roy, C.,* adopted herein as the opinion of Division Two, and adopts, as expressing his views, the above and foregoing opinion of *Williams, C.*